IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| BRULE RESEARCH ASSOCIATES TEAM, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> A. O. SMITH CORPORATION and A. O. SMITH WATER PRODUCTS COMPANY, <br><br> Defendants. | CIVIL ACTION NO. 08-CV-1116 |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(c) OF THE FEDERAL RULES OF CIVIL PROCEDURE

MICHAEL BEST & FRIEDRICH LLP

S/ S. Edward Sarskas
Jonathan H. Margolies
S. Edward Sarskas
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
Telephone:    414.271.6560
Facsimile:    414.277.0656

Attorneys for Defendants
A. O. Smith Corporation and
A. O. Smith Water Products Company

Dated: March 2, 2009

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ....................................................................................... ii - v

BACKGROUND ......................................................................................................... 1

ANALYSIS ................................................................................................................. 3

    I.     Brule's Complaint Should Be Dismissed for Failure to State a Claim. ................ 4

         A.     Brule's Complaint Contains Only Allegations That Are Speculative And Hypothetical And Fails To Provide Fair Notice of the Grounds for its Claim. ................................................................ 5

         B.     Brule's Complaint Fails To Allege Fraudulent Intent With Particularity. ....................................................................................... 10

    II.    Brule's Complaint Should Be Dismissed for Lack of Article III Standing. ........ 13

         A.     Brule Has Not Alleged Any Injury In Fact that Could Confer Standing. ...................................................................................... 14

         B.     Brule Has Not Alleged An Injury To The Public That Could Confer Standing. .............................................................................. 16

         C.     Brule Has Not Alleged Any Injury To the United States That Could Confer Standing, And 35 U.S.C. § 292(b) Does Not Permit Brule To Derive Standing By Taking An Assignment Of An Injury To The United States. ............................................................. 16

             1.     Brule Does Not And Cannot Allege an Injury to the United States. ................................................................ 17

             2.     Vermont Agency's Holding Is Limited To The False Claims Act. ........................................................................ 19

         D.     Brule Has Not Alleged And Cannot Allege Causation Or Redressibility. ................................................................................. 20

         E.     It Would Be Futile To Permit Brule To Amend Its Fatally Deficient Complaint. ................................................................... 21

    III.   Section 292(b) Violates Article II of the Constitution When Asserted By Brule on Behalf of the United States. ...................................... 23

         A.     A Plaintiff Such As Brule Cannot Pursue A Claim For Violation of 35 U.S.C. § 292 Without Violating The Appointments and Take Care Clauses of the Constitution. ............................................. 23

         B.     35 U.S.C. §292(b) Does Not Have Any Of The Safeguards Contained In the False Claims Act.. ......................................... 26

CONCLUSION ........................................................................................................... 28

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Ackerman v. Northwestern Mutual Life Insurance Co.*,
172 F.3d 467 (7th Cir.1999) .................................................................11

*Aetna Life Insurance Co. v. Haworth*,
300 U.S. 227 (1937)............................................................................14

*Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*,
499 F.3d 663 (7th Cir. 2007) ................................................................9

*Ayers v. Johnson*,
247 Fed. Appx. 534, 536 (5th Cir. 2007)...............................................22

*Baker v. Carr*,
369 U.S. 186 (1962)............................................................................14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007)....................................4, 5, 8, 9, 13, 28

*Bethany Phamacal Company, Inc. v. QVC, Inc.*,
241 F.3d 854 (7th Cir. 2001) ...............................................................22

*Buckley v. Valeo*,
424 U.S. 1 (1976)...............................................................................24

*Chi. District Council of Carpenters Pen. Fund v. R & R Flooring, Inc., No. 98 C 4247*,
2000 WL 336515 (N.D. Ill. Mar.28, 2000)................................................22

*Clontech Laboratories, Inc. v. Invitrogen Corp.*,
263 F. Supp. 2d 780 (D. Del. 2003), *rev'd on other grounds, Clontech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347 (Fed. Cir. 2005).............6, 9, 10

*Daimler-Chrysler Corp. v. Cuno et al.*,
547 U.S. 332 (2006)............................................................................15

*Eaton v. United States*,
458 F.2d 704 (7th Cir.1972) ................................................................3

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*,
528 U.S. 167 ....................................................................................16

ii

*Greer v. Board of Ed. of Chicago,*
    267 F.3d 723 (7th Cir. 2001) ........................................................................4

*Implement Service, Inc. v. Tecumseh Products Co.,*
    726 F. Supp. 1171 (S.D. Ind. 1989) ............................................................3

*J.D. Marshall Intern, Inc. v. Redstart, Inc.,*
    935 F.2d 815 (7th Cir. 1991) ...............................................22, 23 (Cont'd)

*Jennings v. Automobile Meter Products, Inc.,*
    495 F.3d 466 (7th Cir. 2007) ........................................................................9

*LaPorte County Republican Central Committee v. Board of Comm'rs of County
    of LaPorte,*
    43 F.3d 1126 (7th Cir. 1994) ........................................................................4

*Lee v. City of Chicago,*
    330 F.3d 456 (7th Cir. 2003) ...................................................................3, 13

*Limestone Development Corp. v. Village of Lemont,*
    520 F.3d 797 (7th Cir. 2008) ...............................................................5, 8, 9

*Linda R.S. v. Richard D.,*
    410 U.S. 614 (1973) .....................................................................................14

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...............................................................................13, 16

*Morrison v. Olson,*
    487 U.S. 654 (1988) .........................................................................24, 25, 28

*North Shore Gas Co. v. E.P.A.,*
    930 F.2d 1239 (7th Cir.1991) ................................................................14, 16

*Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,*
    163 F.3d 449 (7th Cir. 1998) ........................................................................3

*Northern Trust Co. v. Peters,*
    69 F.3d 123 (7th Cir. 1995) ..........................................................................4

*Norton v. Curtiss,*
    57 C.C.P.A. 1384, 443 F.2d 779 (1970) .....................................................11

*Peoples v. Sebring Capital Corp.,*
    209 F.R.D. 428 (N.D. Ill. 2002) .................................................................22

iii

*Perkins v. Lukens Steel Company,*
    310 U.S. 113 (1940) ....................................................................................16

*Peterson v. Comty. General Hospital,*
    No. 01-C-50356, 2003 WL. 262515 (N.D. Ill. Feb.7, 2003) ......................11

*Riley v. St. Luke's Episcopal Hasp.,*
    252 F.3d 749 (5th Cir. 2001) ......................................................................25

*Sicom Systems Ltd. v. Agilent Technologies, Inc. et al.,*
    427 F.3d 971 (Fed. Cir. 2005) ....................................................................13

*Sierra Club v. Morton,*
    405 U.S. 727 (1972) ....................................................................................16

*South East Lake View, Etc. v. Department of Housing,*
    685 F.2d 1027 (7th Cir. 1982) ....................................................................14

*Sprint Communications Co., L.P. v. APCC Services, Inc.,*
    128 S. Ct. 2531 (2008) ................................................................................23

*Stoner v. Santa Clara County Office of Education,*
    502 F.3d 1116 ..............................................................................................24

*Thomason v. Nachtrieb,*
    888 F.2d 1202 (7th Cir. 1989) ......................................................................3

*U.S. ex rel. Garst v. Lockheed-Martin Corp.,*
    328 F.3d 374 (7th Cir. 2003) ....................................................................4, 11

*U.S. v. Dunkel,*
    927 F.2d 955 (7th Cir. 1991) ........................................................................4

*United States ex rei. Kelly v. Boeing Co.,*
    9 F.3d 743 (9th Cir. 1993) ......................................................................25, 26

*United States ex rei. Kreindler & Kreindler v. United Techns. Corp.,*
    985 F.2d 1148 (2d Cir. 1993) ......................................................................26

*United States ex rel. Crews v. NCS Healthcare of Ill., Inc.,*
    460 F.3d 853 (7th Cir.2006) ......................................................................7, 18

*United States ex rel. Fowler v. Caremark RX, L.L.C.,*
    496 F.3d 730 (7th Cir.2007) ....................................................................10, 11

iv

*United States ex rel. Gross v. AIDS Research Alliance-Chicago,*
  415 F.3d 601 (7th Cir.2005) ...................................................................................11, 12

*United States ex rel. Lee v. SmithKline Beecham, Inc.,*
  245 F.3d 1048 (9th Cir.2001) ...................................................................................11

*United States ex rel. Obert-Hong v. Advocate Health Care,*
  No. 99-C-5806, 2001 WL 303692 (N.D. Ill. Mar.28, 2001) ....................................11

*United States ex rel. Phipps v. Comprehensive Community Development Corp.,*
  152 F. Supp. 2d 443 (S.D.N.Y.2001)........................................................................19

*United States ex rel. Salmeron v. Enterprise Recovery System, Inc.,*
  464 F. Supp. 2d 766 (N.D. Ill. 2006) ........................................................................11

*United States ex rel. Stone v. Rockwell International Corp.,*
  282 F.3d 787 (10th Cir. 2002) ...................................................................................25

*United States ex rel. Walsh v. Eastman Kodak Co.,*
  98 F. Supp. 2d 141 (D.Mass.2000) ............................................................................19

*United States v. Health Possibilities, P.S.C.,*
  207 F.3d 335 (6th Cir. 2000) .................................................................................26, 27

*United States v. Schimmels,*
  127 F.3d 875 (9th Cir.1997) ......................................................................................23

*Vermont Agency of Natural Resources v. United States ex rel. Stevens,*
  529 U.S. 765 (2000)...............................................................14, 17, 18, 19, 20, 23, 25

*Vicom, Inc. v. Harbridge Merchant Services, Inc.,*
  20  F.3d 771 (7th Cir.1994) .......................................................................................10

*Warth v. Seldin,*
  422 U.S. 490 (1975)....................................................................................................14

*Wilson v. Town of Clayton,*
  839 F.2d 375 (7th Cir. 1988) .......................................................................................5

Case 2:08-cv-01116-CNC   Filed 03/02/09   Page 6 of 34   Document 31

A. O. Smith Corporation and A. O. Smith Water Products (collectively, "A. O. Smith") respectfully move the court to enter judgment on the pleadings in favor of A. O. Smith pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiff Brule Research Associates Team, L.L.C ("Brule") purports to bring this Complaint against A. O. Smith for the alleged "false markings" of certain expired patents pursuant to 35 U.S.C. § 292. Brule is a limited liability company organized and existing under the laws of Virginia, whose sole member, Kathleen A. Eisenmann, is an attorney licensed to practice law in Wisconsin. Brule was organized and registered in August of 2008, presumably for the sole purpose of filing this lawsuit; the Complaint is silent as to any other purpose. Brule's Complaint does not allege that it is a competitor of A. O. Smith, nor does it seem to have any commercial purpose other than prosecuting this lawsuit. Nor does Brule allege any injury from the conduct complained of, but rather appears to be suing merely for the purpose of collecting a "bounty." Section 292(b) allows for a penalty of up to $500 per offense for the false marking of a patent for the purpose of deceiving the public, and if the suit is brought by a private citizen, "one-half of the amount shall go to the person suing and the other to the use of the United States." 35 U.S.C. § 292(b).

Brule's Complaint should be dismissed on three independent grounds. First, Brule's Complaint should be dismissed because Brule provides no factual detail to support its conclusory allegations of the false marking of A. O. Smith's products or its unsupported assertions that A. O. Smith's markings caused harm. Moreover, Brule's allegations must be pled with particularity because they require Brule to allege the essential element that A. O. Smith marked these products with the intent to deceive the public. Brule has not met either of these pleading

1

requirements imposed by the Federal Rules of Civil Procedure. Brule's Complaint should be dismissed.

Additionally, this court lacks subject matter jurisdiction because Brule is unable to satisfy Article III standing requirements. Brule cannot satisfy the "case and controversy" requirement of the Constitution because it has not suffered any "injury in fact" as required by Article III and Supreme Court jurisprudence. Without an injury in fact, it is axiomatic that Brule is also unable to satisfy the other standing requirements of causation and redressability. Although there may be limited situations where a plaintiff bringing suit under certain *qui tam* statutes may satisfy standing through a partial assignment of the United States' claim, these limited situations are not applicable to a plaintiff, such as Brule, who brings suit under 35 U.S.C. § 292 and does not allege an injury in fact to the United States. Because Brule cannot establish that it has Article III standing, its Complaint must be dismissed.

Finally, Section 292, as applied to Brule, violates the "Take Care" and "Appointments" Clauses of Article II of the United States Constitution. These Clauses read together require that the Executive Branch exercise adequate control over suits where, as here, the United States is the real party in interest. Section 292, when asserted by a private plaintiff like Brule, lacks the traditional *qui tam* requirements that permit government oversight and control. Consequently, Brule cannot show that it can pursue its claims without participation from the United States without violating Article II.

For all of these reasons, Brule's claims should be dismissed with prejudice pursuant to Rule 12(c).

# ANALYSIS

Under Rule 12(c), a party may move for judgment on the pleadings after the parties have filed the complaint and the answer. Fed. R. Civ. P. 12(c); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). A motion to dismiss under Rule 12(c) challenges the sufficiency of the pleadings in the complaint, and a court should apply the same standards as motions under Rule 12(b) of the Federal Rules of Civil Procedure as it would for Rule 12(c) motions. *Northern Indiana*, 163 F.3d at 452. Therefore, like a Rule 12(b)(6) motion, a Rule 12(c) motion should be granted when it appears beyond a doubt that the non-movant "cannot prove any facts that would support his claim for relief." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989).

The Court may accept allegations in a complaint as true, "except to the extent that they are inherently incredible, merely conclusory rather than statements of fact, or are contradicted by the record." *Eaton v. United States*, 458 F.2d 704, 706 (7th Cir. 1972). "The mere assertion of a right to recovery by the plaintiff is not enough to avoid a motion to dismiss if the facts pleaded are legally insufficient." *Implement Service, Inc. v. Tecumseh Products Co.*, 726 F. Supp. 1171, 1175 (S.D. Ind. 1989). Accordingly, the plaintiff has the burden to properly allege the facts of his claim to survive a motion to dismiss or for judgment on the pleadings. *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003).

The record in this case provides the Court with several grounds to dismiss under Rule 12(c). Brule cannot satisfy the pleading requirements of Rule 8 or Rule 9 of the Federal Rules of Civil Procedure. But even if it could, Brule cannot satisfy the constitutional requirement that it establish that it has standing to pursue this action in the first instance. Finally, this Court should find that 35 U.S.C. § 292(b) is unconstitutional when asserted by a private party who cannot

3

allege injury in fact to itself or the United States because Section 292(b) has no framework for avoiding violation of the "Take Care" and "Appointments" Clauses of Article II of the United States Constitution, and the Court should dismiss Brule's action on that ground.

## I.     Brule's Complaint Should Be Dismissed for Failure to State a Claim.

Specifically, Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8 is to protect "judges and adverse parties from [the task of] try[ing] to fish a gold coin from a bucket of mud." *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003); *see also U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("[j]udges are not like pigs, hunting for truffles buried in" pleadings); *Greer v. Board of Ed. of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001) ("a lawsuit is not a game of hunt the peanut.").

Recently, the United States Supreme Court has clarified and explained how the language of Rule 8 should be applied. In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, (2007), the Court held that a complaint must provide sufficient factual detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." Indeed, to satisfy this standard, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 1964-65. Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level ..." *Id.*[1] Indeed, *Twombly* expressly "retired" the oft-repeated phrase that a court may not dismiss a complaint

---

[1] Even before *Twombly,* the Seventh Circuit rejected the notion that a series of conclusory statements without sufficient factual support could withstand a motion to dismiss. *See e.g., Northern Trust Co. v. Peters,* 69 F.3d 123, 129 (7th Cir. 1995) (conclusory statements and unwarranted inferences will not survive a motion to dismiss); *LaPorte County Republican Cent. Comm. v. Bd. of Comm'rs of County of LaPorte,* 43 F.3d 1126, 1129 (7th Cir. 1994) (If a complaint fails to allege sufficient facts for each element of a cause of action, it must be dismissed.).

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 1968.

Applying this standard, the Seventh Circuit recently held that "a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case . . . ." *Limestone Development Corp. v. Village of Lemont,* 520 F.3d 797, 802-03 (7th Cir. 2008) (citations omitted). This is particularly true in "a potentially complex litigation, or one that by reason of the potential cost of a judgment to the defendant creates the 'in terrorem' effect." *Id.* at 803. Accordingly, in the Seventh Circuit a "complaint must always" allege both a cognizable legal theory and:

> ... enough facts to state a claim to relief that is plausible on its face. . . and how many facts are enough will depend on the type of case. In a complex antitrust or RICO case, a fuller set of factual allegations than found in the sample complaints in the civil rules' Appendix of Forms may be necessary to show that the plaintiff's claim is not 'largely groundless'... If discovery is likely to be more than usually costly, the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim.

*Id.* at 803-04 (citations omitted); *Wilson v. Town of Clayton,* 839 F.2d 375, 378 (7th Cir. 1988).

### A. Brule's Complaint Contains Only Allegations That Are Speculative And Hypothetical And Fails To Provide Fair Notice of the Grounds for its Claim.

The Court should not be misled by Brule's 92-page Complaint. Despite its length, Brule's Complaint does not even begin to satisfy the Rule 8 pleading requirements as articulated by the Supreme Court in *Bell Atlantic.* Brule purports to bring this claim under 35 U.S.C. § 292, which states:

> (a) Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States, or imported by the person into the United States, the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the consent of the patentee; or

Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public; or

Whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words "patent applied for," "patent pending," or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public--

Shall be fined not more than $500 for every such offense.

(b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

35 U.S.C. § 292.

Accordingly, a plaintiff such as Brule must set forth several elements to allege a violation of Section 292 sufficient to withstand a motion testing the sufficiency of the complaint. He must show that someone, without consent, improperly marked a product with the intent of counterfeiting or imitating the mark of the patentee, or with the intent of deceiving the public. *See id*. At a bare minimum, Brule must set forth that A. O. Smith falsely marked patents with the intent to deceive the public. *See Clontech Laboratories, Inc. v. Invitrogen Corp.*, 263 F. Supp. 2d 780, 791 (D. Del. 2003) (setting forth the elements for a Section 292 violation), *rev'd on other grounds*, *Clontech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347 (Fed. Cir. 2005). However, Brule's Complaint fails to set forth facts sufficient to allege a potential claim under Section 292, and therefore, the Court should dismiss this action pursuant to Rule 12(c) for failure to state a claim upon which relief may be granted.

Brule's Complaint merely lists a number of expired patents to which A. O. Smith is the assignee. (*See* Complaint ¶¶ 10-144). In its damage section, Brule's Complaint alleges in broad conclusory fashion, collectively or alternatively, that (i) A. O. Smith's products were marked with a patent that did not cover the marked products, and/or (ii) the products were marked

"patent pending" when no patent applications were actually pending. (*See* Complaint ¶ 409.) It is impossible to tell from Brule's Complaint what conduct of A. O. Smith is at issue, when or where that conduct occurred and who was involved or had knowledge of the alleged conduct.

What is certain from Brule's Complaint however, is that Brule is unable to plead anything more than a "likely" or "potential" harm that might flow if some unidentified person or company might possibly have seen one of A. O. Smith's unidentified products and possibly have been misled about whether a patentee controls the intellectual property marked on A. O. Smith's products:

> Each expired patent marked on the products identified herein, each patent marked on such products which has a scope which does not cover the product on which it is marked, and/or each patents pending marked on such products when no patent applications are pending (directly or on the packaging thereof), **is likely to, or at least has the potential to,** discourage or deter each person or company (itself or by its representatives) which views the product from commercializing a competing product or mislead each person or company into believing that a patentee controls such products or externalizing the risk of error in the determination, placing it on the public rather than the DEFENDANTS, and increasing the cost to the each person or company to ascertain whether a patentee in fact controls the intellectual property marked on such products.

(*See* Complaint ¶ 409) (emphasis added). This "likely" or "potential" harm is insufficient.[2]

Brule's Complaint also alleges, again in broad conclusory fashion, the possibility that the allegedly flawed marking on A. O. Smith's products may have wrongfully quelled competition:

> **Upon information and belief,** DEFENDANTS' marking of their products identified herein with the numbers of expired patents, marking of their products identified herein with the numbers of patents having scopes which do not cover the marked products,

---

[2]    In the FCA context, a relator must identify at least one knowingly false claim that was actually submitted and cannot rely on the mere probability or possibility that a false claim was submitted to the government for payment. *United States ex rel. Crews v. NCS Healthcare of Ill., Inc.*, 460 F.3d 853, 856 (7th Cir. 2006).

and/or marking of their products identified herein with the terms patents pending, as described above and/or **as will be further later evidenced, has wrongfully quelled competition with respect to such products thereby causing harm to Plaintiff, the United States, and the public**.

(*See* Complaint ¶ 410) (emphasis added). Tellingly, these allegations are made "upon information and belief" and they do not identify a single specific product that caused a single specific person or entity to be deceived – let alone identify how A. O. Smith's conduct caused harm to anyone - due to the alleged "quelled competition." In fact, Brule fails to identify any competitor or potential competitor who has seen an A. O. Smith patent marking on its product, and certainly fails to identify any such competitor who was actually deceived to the point that A. O. Smith's conduct could possibly have quelled competition. Also, telling is the fact that Brule concedes that it lacks basis for its assertions but hopes that it might later uncover some support for its conclusory hypothetical allegations:

> For the reasons set forth herein, **and for other reasons that will later be evidenced**, DEFENDANTS have wrongfully and illegally advertised patent monopolies which they do not possess and, as a result, have benefited by maintaining their substantial market share with respect to the herein described products.

(*See* Complaint ¶ 411) (emphasis added). Brule's approach to litigation - sue first, investigate later - is impermissible under *Twombly* and *Limsestone Development* and their progeny.

Brule's Complaint fails to provide any explanation for its allegation that A. O. Smith "wrongfully and illegally advertised patent monopolies" or for how the allegedly expired patents "benefited" A. O. Smith or maintained their "substantial market share" for these products. Instead, Brule's Complaint is a pure formulaic recitation of the statute and a laundry list of allegedly expired patents. From these deficient conclusory allegations, it is impossible for A. O. Smith to know or determine what conduct is alleged to violate Section 292, who participated in

that conduct, and when, where or how the alleged conduct occurred. In fact, Brule's Complaint confirms that even Brule does not know whether the alleged conduct or its alleged effects is anything more than speculative or hyopthetical. Under *Twombly* and Seventh Circuit precedent, this is grossly inadequate. *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) (quoting *Twombly* and noting that a plaintiff's complaint "'requires more than labels and conclusions, and a formulaic recitation of the cause of action's elements will not do.'").

Moreover, another significant defect in Brule's Complaint is that it does not set forth any facts alleging that these products were marked with the intent to deceive the public, which is a necessary element of Section 292. Under *Twombly*, a complaint that fails to allege a critical element of a claim is insufficient. *See Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (discussing dismissal under the Rule 8 standard and noting that when the "factual detail in a complaint [is] so sketchy," dismissal is appropriate because "the complaint does not provide the type of notice of the claim to which the defendant is entitled"). Brule must set forth all of the elements of Section 292; it cannot merely speculate that A. O. Smith has violated the statute and state so in conclusory form without any supporting detail. *See id.* Brule's Complaint wholly lacks the requisite "factual matter" necessary to allege a violation of Section 292. *See id.*; *Clontech*, 406 F.3d at 1352-53 (Federal Circuit noting that Section 292's requirement that patents be marked with the intent to deceive the public constitutes a "fraudulent intent," and that without proof of intent to defraud the public "no liability under the statute ensues"). Where Brule has failed to plead the essential elements of its claim, A. O. Smith should not be forced to conduct expensive litigation in order to demonstrate the groundlessness of Brule's Complaint. *Limestone*, 520 F.3d at 803.

9

**B.  Brule's Complaint Fails To Allege Fraudulent Intent With Particularity.**

The Court should dismiss Brule's Complaint because it fails to allege fraudulent intent with enough detail to satisfy the "heightened pleading" standard of Rule 9. Pursuant to Rule 9, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The particularity requirement is intended to require more investigation before a complaint is filed to protect defendants from the harm that can result from the public accusation of fraud. *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir.2007); *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777 (7th Cir.1994) (affirming dismissal and observing that the relator must plead the "who, what, when, where, and how" so that a defendant has notice of the alleged behavior and is protected from frivolous suits and from fishing expeditions).

*Qui tam* statutes, such as the False Claims Act ("FCA") or Section 292 must be pled with particularity. *See U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 742-43 (7th Cir. 2007) (noting that *qui tam* actions under False Claims Act must meet the Rule 9(b) pleading requirements). Because Section 292 is a *qui tam* statute with an "intent to deceive" element, it must satisfy the fraud pleading requirements of Rule 9(b). *See id.* Additionally, the Federal Circuit has noted that Section 292's requirement that patents be marked with the intent to deceive the public must constitute a "fraudulent intent." *Clontech*, 406 F.3d at 1352 (quoting *Norton v. Curtiss*, 443 F.2d 779, 795-96 (1970)). The Federal Circuit in *Clontech* held that absent proof of intent to defraud the public, "no liability under the statute ensues." *Id.* at 1353.

In *Fowler*, the Seventh Circuit confirmed that the relator must identify at least one specific false or fraudulent claim to support its allegation that a defendant defrauded the government on a massive scale over a number of years. *Id.* at 740. In reviewing the sufficiency

of the allegations of fraud, the Court demanded allegations "at an individualized transaction level," *id.* at 942, of a fraudulent claim and concluded that in the absence of such evidence, the complaint did not satisfy Rule 9(b)'s fraud pleading standard of a false claim and of the defedant's knowledge of a false claim. *Id.* at 941-42. Consistent with this rationale, dismissal of *qui tam* complaints will be upheld by the Seventh Circuit when the relator has failed to "link" her allegations of fraud "to any claim for payment." *Garst*, 328 F.3d at 378; *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601 (7th Cir. 2005).

By requiring the who, what, where and when of the alleged fraud, Rule 9(b) requires the plaintiff "to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). "Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual). . . ." *Id.*; accord *Fowler*, 496 F.3d at 740. When a complaint alleges numerous instances of fraud over a multi-year period, however, it would be both impractical to require detailed allegations of every single submission of a false claim. *See, e.g., United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir.2001); *United States ex rel. Salmeron v. Enterprise Recovery Sys., Inc.*, 464 F. Supp. 2d 766, 768 (N.D. Ill. 2006). A solution responsive to both sets of concerns, and to both Rule 8 and Rule 9, is to require at least a few representative examples. *Peterson v. Comty. Gen. Hosp.*, 2003 WL 262515, at *2 (N.D. Ill. Feb.7, 2003); *United States ex rel. Obert-Hong v. Advocate Health Care*, No. 99-C-5806, 2001 WL 303692, at *3 (N.D. Ill. Mar.28, 2001). This, of course, provides the "link" between the allegations of deceit and an actual claim for payment. *See Gross*, 415 F.3d at 605.

11

Brule's Complaint states the conclusion that A. O. Smith marked products with patent numbers when those patents were either expired or did not cover the marked products. Brule concludes that A. O. Smith did this with the intent to deceive the public, and that the result is that competition has been quelled and that Brule, the public and the United States have been harmed. Brule's Complaint provides no detail to support its conclusions – not even one example that links Brule's allegations of fraud to any A. O. Smith conduct. Brule's Complaint does not provide a single representative example of: (1) a specific A. O. Smith product that A. O. Smith intentionally marked with an expired patent or a patent that did not cover the marked product; (2) with identification of who decided to mark the product; (3) any allegation of what was known or believed by A. O. Smith about the patents or the product at the time A. O. Smith marked the product; (4) any allegation about when or where A. O. Smith decided to mark the product; (5) any allegation about how the markings were placed on the products to carry out the alleged intent to deceive the public. Moreover, Brule's Complaint concludes that A. O. Smith "quelled competition" but fails to identify even one potential competitor who saw a falsely marked A. O. Smith product and decided not to compete, thus quelling competition. Indeed, Brule's Complaint admits that it cannot identify any such competitor and that its claim is entirely speculative and hypothetical when it states that A. O. Smith's conduct "is likely to or at least has the potential to, discourage" competition. (Complaint ¶ 409.) Brule also effectively concedes that it cannot satisfy the pleading requirements of Rules 8 and 9. (*See* Complaint ¶¶ 410-411 pleading "upon information and belief" and hoping that it will later find evidence that Defendants quelled competition and benefited by maintaining market share.)

In summary, Brule's Complaint is wholly inadequate whether evaluated under Rule 8 or Rule 9. The allegations set forth in the Complaint are conclusory and lack even the most basic

details such that Brule's Complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 S. Ct. at 1974. Because Brule purports to bring this Complaint as a *qui tam* relator, it is required to plead the fraudulent elements of Section 292 with particularity; Brule has not done this and fails to satisfy the pleading requirements of Rule 9(b). Accordingly, Brule's Complaint should be dismissed.

## II.   Brule's Complaint Should Be Dismissed for Lack of Article III Standing.

A plaintiff filing suit in federal court must meet certain mandatory constitutional and prudential requirements. Standing to sue is a threshold requirement in every federal action. *Sicom Systems Ltd. v. Agilent Technologies, Inc. et al.*, 427 F.3d 971, 976 (Fed. Cir. 2005). The party bringing the action bears the burden of establishing that it has standing under Article III of the Constitution. *Id.* A party has standing if it can demonstrate (1) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (3) redressibility (i.e. the likelihood that the injury will be redressed by a favorable decision). *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).

The requirement that a federal court hear a lawsuit only if the plaintiff can demonstrate an injury in fact has been described as requiring the plaintiff to show "a personal stake in the outcome of the controversy" sufficient to warrant the court's use of its remedial powers on the plaintiff's behalf. *Baker v. Carr*, 369 U.S. 186, 204 (1962). Moreover, constitutional limitations require that a plaintiff allege "some threatened or actual injury." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973); *see also Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). The allegedly

13

injured plaintiff must have a personal stake in the outcome, and a federal court may only adjudicate an action when the dispute touches upon "the legal relations of parties having adverse legal interests." *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240-41 (1937).

Section 292 has been characterized as a *qui tam* statute.[3] The Supreme Court has held that every plaintiff, including plaintiffs in *qui tam* actions, must meet the constitutional standing requirements of injury, causation, and redressibility. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 771 (2000). Brule must satisfy the "undemanding" requirements of having an "actual or imminent" injury that is "concrete and particularized" to him. *North Shore Gas Co. v. E.P.A.,* 930 F.2d 1239, 1242 (7th Cir.1991). Additionally, Brule must have an actual stake in the outcome that goes beyond "intellectual or academic curiosity." *South East Lake View, Etc. v. Dept. of Housing,* 685 F.2d 1027, 1033 (7th Cir. 1982). Brule cannot meet these unwaivable Article III standing requirements.

### A.     Brule Has Not Alleged Any Injury In Fact that Could Confer Standing.

There is nothing in Brule's Complaint that recites any harm or authentic injury that it has personally suffered or even could possibly suffer resulting from A. O. Smith's conduct. Brule purports to set forth its "injuries" at paragraphs 409-411 of its Complaint. At paragraph 409, Brule claims that the alleged false marking "is likely to, or at least has the potential to" discourage competition in similar products. (Complaint ¶ 409.) This assertion, on its face, is nothing more than a hypothetical injury. It describes only a prospective, theoretical, and as yet unrealized harm. Therefore, Brule cannot demonstrate that it has suffered an injury in fact. *See*

---

[3]  "*Qui tam*" is a shortened version of the Latin phrase "*qui tam pro domino rege quam pro se ipso in hac parte sequitur,*" which means "who pursues this action on our Lord the King's behalf as well as his own." Black's Law Dictionary defines "*qui tam*" as "[a]n action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive." Black's Law Dictionary (8th ed. 2004).

*Daimler-Chrysler Corp. v. Cuno et al.*, 547 U.S. 332, 344 (2006) (reiterating that a plaintiff lacks standing based upon "conjectural or hypothetical" injuries).

Brule is similarly unsuccessful in alleging an injury in fact at paragraph 410. Here, Brule concludes without any supporting detail that the allegedly false markings wrongfully quelled competition and harmed Brule, the United States, and the public. (Complaint ¶ 410.) This too is insufficient to satisfy the Article III standing requirements. *See Daimler-Chrysler Corp.*, 547 U.S. at 344. Brule's Complaint relies only upon labels and conclusions with a formulaic recitation of the elements rather than factual detail that raises a right to relief above the speculative level. Brule does not say anything about how competition was quelled, or what competitor or potential competitor considered competing with A. O. Smith but was deceived into believing that A. O. Smith's marked patents would impede such competition. Without some allegation that an actual or potential competitor of A. O. Smith was deceived by the allegedly false markings, there is no conceivable way that A. O. Smith's conduct could have "quelled competition." Yet, it is indisputable that Brule's Complaint does not identify any competitor or potential competitor alleged to have seen a "falsely marked" A. O. Smith product and was deceived by it. Lastly, paragraph 411 of Brule's Complaint merely summarizes the preceding deficient allegations of damages, without alleging a single damage or injury that Brule claims to have suffered. (Complaint ¶ 411.)

Each of paragraphs 409 through 411 of Brule's Complaint establishes that Brule has not and cannot identify or describe any injury in fact that could possibly satisfy the requirement that Brule has standing to pursue the asserted claims.

**B.  Brule Has Not Alleged An Injury To The Public That Could Confer Standing.**

Moreover, Brule is unable to assert that the "public" has suffered an injury to confer standing in this action.  This alleged harm is equally prospective and lacks any sort of concrete or actual allegation of injury to satisfy standing.  The Supreme Court has readily dismissed broad attempts to meet the standing requirements by alleging a harm to the public. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 575 (1992) (quoting *See North Shore Gas Co*, 930 F.2d at 1242) (rejecting a broad "nexus of public injury" argument to satisfy the standing requirement).  Article III stringently requires that the plaintiff himself suffer the injury and standing is never satisfied by alleging a general public injury.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 181-82 (2000).  Injury in fact requires more than just a general injury to the public interest; it requires that "the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-735 (1972).

Even if Brule argues that the alleged falsely marked patents somehow cause injury to the public, this too is insufficient to satisfy the injury in fact requirements of standing.  The Supreme Court and Article III jurisprudence unequivocally direct that a plaintiff may not bring suit to vindicate a general public interest.  Therefore, Brule would have to "show an injury or threat to a particular right of their own," which, as discussed above, Brule is unable to do.  *Perkins v. Lukens Steel Company*, 310 U.S. 113, 125 (1940).  To the extent that Brule attempts to acquire standing through the allegations of public harm, the Court must reject this argument.

**C.  Brule Has Not Alleged Any Injury To the United States That Could Confer Standing, And 35 U.S.C. § 292(b) Does Not Permit Brule To Derive Standing By Taking An Assignment Of An Injury To The United States.**

In an effort to overcome the fact that Brule has failed to satisfy standing by allegations of injury to itself or to the public, Brule may argue that it satisfies the Article III standing

requirements by taking a partial assignment of the United States' claim in reliance upon the Supreme Court's holding in *Vermont Agency*. However, any attempt by Brule to rely on *Vermont Agency* is misplaced, and any such argument would fail for at least two independently sufficient reasons. First, Brule has not and cannot allege that the United States has suffered any injury in fact resulting from A. O. Smith's conduct as described in Brule's Complaint. Second, the reasoning and holding of *Vermont Agency* is narrowly limited to whether "the United States' injury in fact suffices to confer standing on [the relator who brings suit under the False Claims Act, 31 U.S.C. §§ 3729-3733]." *Vermont Agency*, 529 at 771. *Vermont Agency* contains no substantive analysis applicable to claims brought under Section 292 by a Plaintiff who has not and cannot allege that the United States has suffered injury in fact. Thus, *Vermont Agency* cannot save Brule's Complaint, and in fact, demonstrates that Brule does not have standing to assert that A. O. Smith violated Section 292.

### 1. Brule Does Not And Cannot Allege an Injury to the United States.

It is necessary to understand the critical differences between the False Claims Act and Section 292 to fully appreciate the significance of Brule's failure to allege an injury to the United States. That failure is dispositive. The FCA, in its present incarnation, allows persons not affiliated with the federal government to file actions against federal contractors claiming fraud against the government. *See* 31 U.S.C. §§ 3729 *et seq*. Specifically, a private person, referred to as the relator, may bring a *qui tam* action "'for the person and for the United States Government against the alleged false claimant, 'in the name of the Government.'" *Vermont Agency*, 529 U.S. at 769 (quoting 31 U.S.C. § 3730(b)(1)). *Vermont Agency* recognized that an individual "su[es] to remedy an injury in fact suffered by the United States." *Id.* at 771. Indeed, the Court stated that "it is beyond doubt that the complaint asserts an injury to the United States." *Id.* In order

for the FCA relator to satisfy the standing requirement, she must sufficiently allege an injury to the United States. Even if Brule were asserting a claim under the FCA, as opposed to a violation of Section 292 such that *Vermont Agency* were available to Brule, the fact that Brule has not and cannot allege an injury to the United States bars Brule's claim for lack of standing.

This is an unsurprising and logical requirement because the person bringing an action must allege that United States was defrauded in some way; the United States' injury must be clear on the face of the complaint and must be pled with sufficient particularity to satisfy Rule 9(b). *United States ex rel. Crews v. NCS Healthcare of Ill., Inc.*, 460 F.3d 853, 856 (7th Cir. 2006) (FCA relator must identify at least one knowingly false claim that was actually submitted to the government for payment). To bring an action under the FCA, several procedures must be strictly followed. First, a complaint and copy of material evidence and information must be served on the Government. § 3730 (b)(2). The complaint must be filed in camera and must be kept under seal for 60 days while the Government evaluates and investigates the allegations in the complaint. *Id.* The complaint may not be served on the defendant unless ordered by the court. *Id.* Thereafter, "[t]he Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information." *Id.* The Government may intervene or decline to intervene; if it chooses to intervene, "the action shall be conducted by the Government." *Id.* § 3730(b)(4).

The Supreme Court in *Vermont Agency* concluded that these stringent statutory procedures provided a basis for standing when a private actor brings a claim under the FCA because, through the statutory mechanisms, he is a partial assignee of the Government's claims. *Vermont Agency*, 529 U.S. at 769-70. This partial assignment satisfies the Article III standing requirements. *Id.* at 773. Accordingly, *Vermont Agency* held, appropriately, that the "FCA can

reasonably be regarded as effecting a partial assignment of the Government's damages claim," and "the United States' injury in fact suffices to confer standing." *Id.* at 774. Thus, *Vermont Agency* teaches, and logic confirms, that unless the United States has suffered an injury in the first instance, there can be no partial assignment of that injury from the Government to a relator under the FCA.[4]

### 2. Vermont Agency's Holding Is Limited To The False Claims Act.

Brule may not take any comfort in *Vermont Agency's* narrow holding that a FCA *qui tam* relator in that very specific instance satisfied the constitutional standing requirements. The Court recognized two factors that wholly distinguish the FCA from Section 292. First, the Court recognized there must be allegations of an actual injury to the United States caused by fraud before there can be a partial assignment of the United States' claim to a relator under the FCA. *Id.* at 771. Furthermore, the mechanism that permits the partial assignment of the United States' injury to the *qui tam* relator is explicitly contained in the FCA. *Id.* at 784-87. Section 292(b) contains none of the aforementioned safeguards found in the FCA. There are simply no assignment provisions under Section 292 that would allow a Section 292 relator to claim a partial assignment of the government's injury as they would be available under the FCA.

*Vermont Agency* cannot be distorted to apply to an action for violation of Section 292, which is only mentioned in a footnote that identifies it as an example of a *qui tam* statute. *Vermont Agency* only addressed the particular question of whether an FCA relator could derive

---

[4] Even in the context of the FCA, a relator's standing has limitations. For example, a relator does not have standing to assert common law claims based upon injury sustained by the United States and cannot derive standing by assignment. See *United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 451-52 (S.D.N.Y. 2001) (holding that a relator lacks standing to bring common law claims of fraud, mistake of fact, and unjust enrichment); *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 149 (D. Mass. 2000) (holding that a relator lacks standing to bring common law claims of fraud, payment under mistake of fact, and unjust enrichment).

standing from an assignment of the United States' claim arising from an actual injury. The Court closed its Article III analysis by holding that "[w]hen combined with the theoretical justification for relator standing discussed earlier, it leaves no room for doubt that a *qui tam* relator <u>under the FCA</u> has Article III standing." *Id.* at 778 (emphasis added).

Therefore, the reasoning and holding of *Vermont Agency* forecloses any possibility that Brule could satisfy the standing requirements here. First, *Vermont Agency* establishes that a relator who has not herself been injured can only establish standing if she has sufficiently alleged an injury in fact to the United States. Brule has not. Second, *Vermont Agency* teaches that the mechanism that permits a relator who has satisfactorily pled an injury in fact to the United States to satisfy standing by taking a partial assignment of the United States' claim is contained in the framework of the FCA. There can be no dispute that Section 292 lacks the framework of the FCA that the *Vermont Agency* Court relied on for its holding. Brule cannot rely upon the FCA framework to support its argument for standing to pursue a claim under Section 292. Accordingly, this Court is without jurisdiction to consider Brule's Complaint and it should be dismissed.

### D.     Brule Has Not Alleged And Cannot Allege Causation Or Redressibility.

Brule's Complaint alleges that A. O. Smith violated Section 292 by falsely marking patents on its products and that A. O. Smith's conduct has quelled competition causing harm to Brule, the United States and the public. (*See* Complaint ¶¶ 145-158.) However, Brule's Complaint fails to allege that any competitor or potential competitor of A. O. Smith was deceived by any allegedly false patent marking that was caused by A. O. Smith's conduct. It is inconceivable that competition was quelled or any harm was caused to Brule, the United States or the public unless some competitor or potential competitor of A. O. Smith actually saw and

was deceived by one or more of A. O. Smith's allegedly false patent markings. Brule's Complaint fails to identify any deception, and in fact, confirms that Brule is unable to plead that any such deception has been caused. Without any allegation that could support the conclusion that A. O. Smith's conduct caused harm to Brule, the United States or the public, Brule's Complaint evidences its inability to satisfy the requirement of pleading causation.

Similarly, given that Brule has failed to plead any injury in fact to Brule, the United States or the public and has failed to plead causation, as a necessary consequence Brule has also failed to plead redressibility. Brule's Complaint is void of any allegation that could be inferred to show that there is any likelihood that the alleged "injury to Brule, the United States or the public" could possibly be redressed by a decision favorable to Brule. In fact, without a single allegation that any competitor or potential competitor has ever been deterred from competing with A. O. Smith, this Court would have no basis to conclude that the market in which A. O. Smith's products are sold would look any different today than it does if A. O. Smith had never marked a single product with a patent number. Thus, just as it fails to plead injury in fact and causation, Brule's Complaint also fails to plead redressibility. Brule lacks standing.

### E. It Would Be Futile To Permit Brule To Amend Its Fatally Deficient Complaint.

To the extent that Brule requests to amend its Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the Court should deny this request and dismiss the Complaint with prejudice. In considering whether to permit leave to amend a complaint under Rule 15, a court should assess the legal sufficiency of the complaint as amended, as it would on a motion to dismiss on the pleadings. *See* Fed. R. Civ. P. 15(a)(2); *see also Peoples v. Sebring Capital Corp.,* 209 F.R.D. 428, 430 (N.D. Ill. 2002). A court has broad discretion to consider a request to amend a complaint, but a court should deny leave to amend when any amendments to the

complaint would be futile. *Bethany Phamacal Company, Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001); *see also* Wright & Miller, 6 Federal Practice & Procedure § 1487, at 637-642 (2d ed. 1990) ("If the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend.").

Here, the Court must deny any potential request Brule makes to amend its complaint as futile because Brule will never be able to satisfy the constitutional standing requirements to bring this action. Even assuming *arguendo* that A. O. Smith marked its products with expired patents, Brule would never be able to articulate that it suffered a direct and concrete injury in connection with A. O. Smith's actions. Brule's standing deficiencies will never be cured and thus any amendment would not survive a motion to dismiss. *Chi. Dist. Council of Carpenters Pen. Fund v. R & R Flooring, Inc.*, 2000 WL 336515, at *2 (N.D. Ill. Mar.28, 2000) (noting that an amendment should not be permitted where the proposed amendment is "clearly futile," meaning that the amendment could not withstand a motion to dismiss). Brule has not and will never be able to allege that it has suffered an injury in fact; therefore, it will never be able to satisfy its standing requirements. When a plaintiff cannot demonstrate standing, and will not be able to demonstrate standing, a court should deny a request to amend as futile. *Ayers v. Johnson*, 247 Fed. Appx. 534, 536 (5th Cir. 2007); *see also J.D. Marshall Intern, Inc. v. Redstart, Inc.*, 935 F.2d 815, 819-20 (7th Cir. 1991) (affirming the denial of a motion to amend where the plaintiff was unable to remedy any of the deficiencies of the original complaint).

**III.**   **Section 292(b) Violates Article II of the Constitution When Asserted By Brule on Behalf of the United States.**

A private party, such as Brule, that purports to assert Section 292(b) on behalf of but without the participation of the United States cannot do so because it would violate Article II's "Take Care" Clause and "Appointments" Clause.[5]

**A.**   **A Plaintiff Such As Brule Cannot Pursue A Claim For Violation of 35 U.S.C. § 292 Without Violating The Appointments and Take Care Clauses of the Constitution.**

Section 292(b) states, "[a]ny person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." Section 292 is radically different than traditional *qui tam* statutes. In a traditional *qui tam* statute such as the FCA, the plaintiff or "relator" initiates the action on behalf of the United States. The government may elect to intervene, but even if it does not intervene, it still maintains control over the action. *See United States v. Schimmels*, 127 F.3d 875, 882 (9th Cir.1997) ("noting that "in a *qui tam* action, the government is the real party in interest."). Although the relator has not suffered an actual injury, a *qui tam* statute "'effect[s] a partial assignment of the Government's damages claim'" which then confers standing to the relator. *Sprint Communications Co., L.P. v. APCC Services, Inc.,* 128 S.Ct. 2531, 2542 (2008) (quoting *Vermont Agency*, 529 U.S. at 773). "Although the partial assignment allows the relator asserting the government's injury to satisfy the requirements of Article II standing, it does not transform a *qui tam* action into the relator's 'own case'" *Stoner v. Santa Clara County Office of Educ.,* 502 F.3d 1116.

---

[5] This action does not raise any question about the constitutionality of 35 U.S.C. § 292(a), or whether and to what extent the Government could assert Section 292(a) under appropriate circumstances. A. O. Smith's argument that Section 292(b) as asserted by Brule is unconstitutional is limited to Section 292(b) and does not implicate the ability of the Government to assert Section 292(a).

When a plaintiff without any injury in fact and without the ability to allege an injury to the United States brings an action under Section 292, as Brule seeks to do here, it would violate Article II's "Take Care" Clause and "Appointments" Clause. The "Take Care" Clause states that the Executive must "take care that the Laws be faithfully executed." U.S. Const. art. II, § 3. The "Appointments" Clause states that the Executive has the power "to make Treaties, provided two thirds of the Senators present concur; and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States." U.S. Const. art. II, § 2, cl. 2.

The "Take Care" Clause and "Appointments" Clause of the Constitution require the Executive Branch, through the Attorney General, to retain control over all litigation commenced where the Government is the real party in interest. *Buckley v. Valeo*, 424 U.S. 1, 138-139 (1976). Section 292 (b), when asserted by a plaintiff such as Brule, violates the "Take Care" Clause and "Appointments" Clause of the Constitution because a statute that vests "primary responsibility for conducting civil litigation in the courts of the United States for vindicating public rights" in anyone other than the Executive branch violates Article II of the Constitution. *Id.* at 140.

The Supreme Court has explained the proper analysis for courts to apply when assessing whether Congress has unconstitutionally diminished executive power by permitting private plaintiffs to sue in the name of the United States. *See Morrison v. Olson*, 487 U.S. 654 (1988). In *Morrison*, the issue before the Court was whether the Ethics in Government Act of 1978 impermissibly took away the role of the Executive Branch by allowing independent, non-Executive counsel the power to conduct grand jury proceedings, initiate and investigate civil and criminal proceedings, and appeal decisions when independent counsel participated. *Morrison*,

487 U.S. at 662. The Court held that the Ethics in Government Act did not violate Article II because the Executive Branch had "sufficient control over the independent counsel." *Id.* at 696. The Court noted that because the Ethics in Government Act provided that the independent counsel were appointed and removed upon request of the Attorney General, had their jurisdiction limited to what was set forth by the Attorney General, and had to abide by the Department of Justice policies, the Executive had sufficient control over the independent counsel such that the constitutional requirements of Article II were followed.

The Supreme Court has noted that it is still an unanswered question whether the most commonly asserted *qui tam* statute, the False Claims Act ("FCA"), 31 U.S.C §§ 3729-3733, is constitutional. *See Vt. Agency,* 529 U.S. at 778 ("[W]e express no view on the question whether *qui tam* suits violate Article II, in particular the Appointments Clause of § 2 and the "Take Care" Clause of § 3."). Lower courts that have applied the Morrison "control" test have concluded that the stringent safeguards that vest "substantial control" of the relator's action in the Government are sufficient to pass constitutional muster. *See United States ex rel. Stone v. Rockwell Int'l Corp.,* 282 F.3d 787, 806 (10th Cir. 2002) ("[W]e agree with the Fifth, Sixth, and Ninth Circuits, and hold that at least where the Government intervenes, the *qui tam* provisions of the FCA do not violate the separation of powers."); *see also Riley v. St. Luke's Episcopal Hosp.,* 252 F.3d 749, 753 (5th Cir. 2001) (en banc) (finding FCA constitutional because "the Executive retains significant control over litigation pursued under the FCA by a *qui tam* relator"); *United States ex rei. Kelly v. Boeing Co.,* 9 F.3d 743, 755 (9th Cir. 1993) ("[T]he FCA gives the Attorney General sufficient means of controlling or supervising relators to satisfy separation of powers concerns."); *United States ex rei. Kreindler & Kreindler v. United Techns. Corp.,* 985 F.2d 1148, 1155 (2d Cir. 1993) ("[T]he FCA qui tam provisions do not usurp the executive branch's

litigating function because the statute gives the executive branch substantial control over the litigation.")

**B.     35 U.S.C. §292(b) Does Not Have Any Of The Safeguards Contained In the False Claims Act.**

The FCA framework contains numerous stringent mechanisms that ensure and safeguard governmental control of the litigation. *See* 31 D.S.C. §§ 3729-3733; *see also, e.g., Kelly,* 9 F.3d at 753-54 (discussing the FCA's procedural safeguards that give the Executive oversight and control); *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 340 (6th Cir. 2000) ("[T]he FCA provides a number of mechanisms to ensure that the government retains significant authority to regulate *qui tam* litigation."). For example, the FCA lawsuit must "be brought in the name of the Government." The FCA lawsuit may be dismissed only with the written consent of the Attorney General. A copy of the relator's FCA complaint must be served on the government when filed. The government must be given an opportunity to investigate, intervene and take control of the FCA lawsuit. The government retains the right to dismiss the action "notwithstanding the objections of the person initiating the action." The government retains the right to settle the FCA lawsuit "notwithstanding the objections of the person initiating the action." The government retains the right to limit the FCA relator's participation in the litigation. The government retains the right to continue to be served with all papers, to limit discovery, and limit recovery even if it chooses not to intervene.

In stark contrast to the FCA, Section 292(b) contains no similar safeguards to ensure that the United States' rights and interests will be represented or protected. Section 292(b) did not require Brule to notify the Government of the instant action when it was filed or before it was served. Nor does it give the Government any right to control or approve of the way this action would be prosecuted. Nor does it provide the Government with a right to intervene, control

discovery or prevent Brule from taking positions that would impair the rights of the Government or create bad law. Moreover, Section 292(b) provides no mechanism for the Government to challenge any settlement, even where a private plaintiff files a false marking lawsuit and accepts a quick settlement at substantially less than fair value, regardless of the merits of claim or the Government interest in prosecuting the claim.

Given that there is no framework in Section 292(b) to promote the Government's participation or control, the statute is silent as to whether a settlement between a private plaintiff and a defendant would be *res judicata* as to later claims by the Government or a different private plaintiff over the very same conduct. If *res judicata* applies, then we would be left with a system that would permit and perhaps encourage private plaintiffs to compromise claims of the United States without any oversight on terms that the private plaintiff alone determines are reasonable and just. *See Health Possibilities,* 207 F.3d at 341 (expressing concern in the FCA context that "[w]ithout the power to consent to a proposed settlement . . ., the public interest would be largely beholden to the private relator, who . . . would retain sole authority to broadly bargain away government claims."). If *res judicata* does not apply, then the Section 292(b) defendant who settles would never truly resolve the claims because the very same conduct could be the subject of another Section 292 action later commenced by the United States or even another private plaintiff who decides to turn the prosecution of Section 292(b) claims into a cottage industry. This cannot be the law that Congress intended.

Comparing the governmental control under the FCA to that under Section 292(b) and considering the "substantial control" analysis of Article II jurisprudence, Section 292(b) cannot survive constitutional scrutiny. The private entity or individual, such as Brule, seeks to proceed as a *qui tam* representative on behalf of the United States without even the most basic safeguards

or controls to ensure Government participation or oversight of this litigation. When a plaintiff with no injury, such as Brule, brings suit under Section 292(b), the Government's interests are not protected either by a plaintiff with aligned interests or by the inherent statutory mechanisms described in the FCA or *Morrison*. Consequently, this lack of control and protection renders Section 292 in violation of the requirements of Article II.

## CONCLUSION

The Court must dismiss this action because Brule has failed to satisfy the Rule 8 pleading requirements articulated in *Bell Atlantic*. Moreover, Brule has failed to plead the "fraudulent intent" element required by Section 292 with particularity sufficient to satisfy Rule 9(b). Brule also lacks Article III standing to bring this action. Finally, Section 292(b) is unconstitutional because it violates Article II's Take Care and Appointments Clauses as applied to Brule to bring this claim on behalf of the Government. Accordingly, A. O. Smith respectfully requests that this Court dismiss this action under Rule 12(c) with prejudice.